IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SHIRLEY M. WEBB,** | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 11-00732-KD-M |
| **OCWEN LOAN SERVICING, LLC,** | ) |
| and **FEDERAL HOME LOAN** | |
| **MORTGAGE CORPORATION,** | ) |
| Defendants. | ) |

### ORDER

Plaintiff Shirley M. Webb (Webb)filed her complaint against defendants Ocwen Loan Servicing, LLC (Ocwen) and Federal Home Loan Mortgage Corporation (Freddie Mac)in the Circuit Court of Mobile County, Alabama, alleging claims of injunctive relief, wrongful foreclosure, negligence, wantonness, breach of mortgage agreement, and defamation. (Doc. 1-3). This removed action[1] is now before the Court on the motion for summary judgment filed by defendants Ocwen and Freddie Mac, brief, exhibits, and suggested determinations of undisputed fact and conclusions of law(docs. 23-26), Webb's response and exhibits (doc. 30), and defendants' reply and exhibits (docs. 33, 34). Upon consideration and for the reasons set forth herein, the motion is GRANTED in part, and DENIED in part.

I. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Defendant Freddie Mac removed this action after Webb amended her complaint to add it as a defendant. Freddie Mac is a government agency and the removal was based on 28 U.S.C. § 1442(a) and 12 U.S.C. § 1452(f). (Doc. 5)

Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

>    (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>    (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)&(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Also, the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v.Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the

[movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)). However, "A court need not permit a case to go to a jury, [ ] when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir.2002) (citations omitted). Additionally, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552).

II.  Findings of fact[2]

On March 4, 2008, Plaintiff Shirley Webb refinanced her condominium home, located at No. 205, 5608 Cottage Hill Road, Mobile, Alabama, with Home Mortgage Company. The amount of the loan was $83,700.00 with a fixed interest rate of 6.0%. The lender was HMC – Home Mortgages Co. (Doc. 30-1-4) The mortgage has a "Condominium Rider". Section B addresses property insurance and states that

> B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage . . . , then (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy.

(Doc. 30-4)

---

[2] "[W]hat is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

Webb provided proof of insurance at time of closing.[3] The Declaration of Coverage shows that the condominiums were insured for "Commercial General Liability" from March 14, 2007 through March 14, 2010. (Doc. 30-7)  Webb was responsible for escrow of mortgage insurance (PMI) and property taxes but not for escrow of property insurance.[4]

Soon after closing, the loan and the serving rights were transferred from Home Mortgage Company to Taylor, Bean and Whitaker (TBW) (Doc. 24, p. 2) Webb made her monthly mortgage payments to TBW. (Doc. 30-2, Webb Deposition, p. 33-34)  TBW sent Webb a "Statement/Payment Breakdown" which showed that beginning May 1, 2008, her monthly payment would be $501.82 plus escrow for taxes and PMI in the amount of $84.11 for a total of $585.93. (Doc. 30-6)  There was no escrow for "hazard" or "other" insurance.

Later in March 2008, Freddie Mac purchased the loan from TBW.  (Doc.  25-4, Deposition of Donna Brandzeen, p. 17)  However, TBW continued to service the loan and from May 2008 through February 2009, Webb made payments to TBW from her Regions Bank account. (Doc. 30-8, copies of Regions Bank account statements)

In February 2009, Webb filed bankruptcy.  At that time, she was current on her mortgage payments.  She reaffirmed the debt and continued to pay TBW from March 2009 through June 2009.  (Doc. 30-2, Webb Deposition)

In late March 2009, Webb received a tax and insurance account disclosure statement from TBW.  (Doc. 30-14)  The statement showed that her monthly mortgage payment for May

---

[3] Webb provides a copy of the Certificate of Insurance from Pickett & Adams Insurance Company that appears to have been presented at time of closing. (Doc. 30-7, p. 2)  The certificate shows Cottage Green Condominium Association as the insured, Webb as the owner of Unit 205, Home Mortgages Company as the Certificate Holder, and a closing date of March 6, 2008.  The "Type of Insurance" was marked "Commercial General Liability". (Doc. 30-7, p. 2)

[4] Webb pays for property insurance through the Condominium Association. Webb purchased a separate policy for the interior of her condominium through Nationwide Property and Casualty Company.

2009 to April 2010 would increase from $585.93 to $942.37 effective May 1, 2009. The statement indicated that Webb had a "deficiency of $1,343.41" and a "remaining shortage" of $1,306.87. *Id*. Thus, Webb had a balance due of $2,650.28. Webb's escrow amount for taxes and insurance increased from $84.11 to $219.69. Her payment also increased by $220.86 to collect 1/12th of the "deficiency" ($111.95) and 1/12th of the "shortage" ($108.91). *Id*.

Webb contacted TBW to dispute the payment amount. She was told that the increase occurred because TBW had purchased a property insurance policy and the increase would be removed if Webb provided proof of property insurance coverage. Webb was unable to obtain a copy of the Certificate of Insurance from Pickett & Adams but obtained a copy from the title agent that closed the loan. She faxed a copy to TBW.[5] Webb continued to make her monthly payments but did not pay the escrow payment for property insurance or the amount added to pay off the deficiency and the shortage. (Doc. 30-5)

On June 29, 2009, TBW's agent told Webb that it could no longer accept her payments because she had not been discharged from the bankruptcy. On July 1, 2009, Webb's bankruptcy attorney faxed a letter to TBW to authorize the payment. (Doc. 30-15) She was discharged on July 23, 2009. (Doc. 30-7) Webb sent the July 2009 payment to TBW.

The next month, August 2009, Webb was notified that "Ocwen Loan Servicing, Inc." was now servicing the mortgage and that beginning August 12, 2009, payment should be made to Ocwen. The notice did not state that Ocwen had also acquired the mortgage. The notice did not contain a different payment amount. Webb continued to pay $585.93. (Doc. 30-10)

Also, in August 2009, Webb found that the July 2009 payment to TBW had not cleared

---

[5] Webb cites the fax she sent to Ocwen in August 2009. On the fax cover sheet, Webb wrote "Here is my 'Proof' of insurance on the exterior of building through Pickett and Adams." (Doc. 30-7, p. 1)

5

her bank. She stopped payment, wrote a check to Ocwen for July 2009, and mailed it in late August. Webb notified Ocwen in writing that she was replacing the July 2009 check. (Doc. 30-2, Webb deposition, p. 56-57)

Webb paid Ocwen the July 2009 through April 2010 monthly payments from her Regions Bank account but did not pay any escrow for property insurance coverage. (Doc. 30-11)  During August 2009, Webb continued to dispute the escrow for property insurance, communicated with Ocwen employees, and provided Ocwen with proof of insurance coverage (the Certificate of Insurance) along with her bankruptcy discharge. (Docs. 30-7; 30-16)

During this same time period, an Ocwen employee told Webb that there was no record of her April 2009 payment to TBW. (Doc. 30-2, Webb deposition, p. 41-42)  Webb sent Ocwen a copy of her Regions Bank statements showing that the April 2009 payment had cleared the account. (Doc. 30-5)  The statements also showed the other 2009 payments that Webb made to TBW. *Id*. Webb continued to communicate by phone and fax with two departments at Ocwen in an attempt to resolve the question of whether the April 2009 payment to TBW had been credited.[6] (Doc. 30-2, Doc. 30-5).

In September 2009, after reviewing Webb's payment information, Ocwen determined that Webb had been credited with all payments submitted to TBW. (Doc. 24, p. 4)[7] Ocwen also determined that Webb was delinquent $3,963.00 by December 2009. (Id)  Webb received other notices of default from Ocwen: January 15, 2010 (past due $2,553.03) and January 20, 2010 (past due $2,171.82). (Doc. 30-21, Doc. 30-22)

---

[6] At some point during this time frame, Ocwen began to review Webb's loan for a possible trial payment plan under the Home Affordable Mortgage Program (HAMP). Webb had not applied for this program or for any loan modification. (Doc. 30-5, Webb Affidavit)

[7] Ocwen states that it "determined that there was no proof that [Webb] had submitted a payment to" TBW "for which she had not received credit." (Doc. 24, p.4)

In early February 2010, Webb's counsel wrote Ocwen to dispute these amounts.  Counsel explained that Webb had paid in accordance with the mortgage agreement and asked for her payment history.  (Doc. 30-23)  Also in February, Webb spoke with an agent of Ocwen who told her the balance was $2,641.67. (Doc. 30-2, Webb deposition, p. 59)  On February 11, 2010, she received a third notice of default wherein her deficiency was $1,681.55. (Doc. 30-25)

On February 25, 2010, Ocwen responded to Webb's letter and addressed the questions surrounding the July 2009 payment, crediting of other payments, and the notice of default. (Doc. 30-27)  In late March 2010, Ocwen returned Webb's March and April 2010 payments. (Doc. 30-2, Webb deposition, p. 73; Doc. 30-13)  Webb contacted Ocwen and she was told that foreclosure was underway. (Doc. 30-2, Webb deposition, p. 73)

In April 2010, Webb's counsel responded to Ocwen's letter, disputed the debt, and requested verification. (Doc. 30-29; Doc. 30-20)  Later in April, Ocwen sent Webb a debt collection letter explaining that if the account was not brought current, Ocwen would foreclose. The foreclosure notice showed a foreclosure date of June 4, 2010. (Doc. 30-31)  In early May, Webb's counsel again wrote Ocwen to dispute the debt and demand proof.  (Doc. 30-32)  Webb filed suit on June 3, 2010, and Ocwen suspended the foreclosure.  To date, the foreclosure has not occurred.

The assignment of Webb's mortgage to Ocwen was recorded on July 7, 2010.  The assignment is dated June 29, 2010 but was "made and entered into as of" August 13, 2009. (Doc. 30-34)

Webb claims damages for mental anguish. She has migraines, insomnia, and chest pains "related to the stress of dealing with Ocwen's attempt to take her home." (Doc. 30, p. 9)  She also "suffers from loss of sleep worrying about the potential loss of her home." (*Id*.)

Webb also claims economic damages for loss of commissions. Webb explains that

> [she] also lost commissions at work related to the amount of time she was forced to take leave. She is paid a salary, plus 5% commission on her services and sales related to her job performance. However, if she is not working, she looses that potential commission. Because of her problems concerning her mortgage, she took off numerous days to meet with attorneys prior to the foreclosure sale of her home and lost commission for that time off.

(Doc. 30, p. 9) Webb states as follows:

> I had to take time off work to meet with attorneys prior to the foreclosure date. I used my vacation time and sick leave when I took off work. However, I am paid a 5% commission on sales and services I provide. Since I was not at work, I lost commission from potential sales and services that I was unable to perform.

(Doc. 30-5, Webb affidavit, ¶ 16)

Webb's supervisors testified that Webb used paid vacation days for the time off from work related to financial matters and did not take any unpaid leave time. (Doc. 25-7, Deposition of Dianna D. Blount, p. 13, 30, 33-34; Doc. 25-8, Deposition of Patricia L. Cooch, p. 14-17, 23). Webb's employer encourages its employees to take their ten days of paid vacation because if they do not, they lose their vacation and there is no compensation for electing not to take vacation. (Doc. 25-7, Blount deposition at 38-39; Doc. 25-8, Cooch deposition at p. 23-24, 30).

III. Analysis

A. Wrongful foreclosure[8]

Webb claims that the "institution" of foreclosure proceedings was wrongful because no

---

[8] To the extent that Webb claims negligent and wanton attempts to foreclose that claim is subsumed in her claim for wrongful foreclosure. *See Phifer v. Bank of America*, 2012 WL 1571300, *5 (M.D. Ala. May 4, 2012) ("Alabama law appears to recognize both a negligent and wanton foreclosure claim. . . . Therefore, the negligence and wantonness claims are subsumed in the wrongful foreclosure claim") (citing *Jackson v. Wells Fargo Bank*, 990 So 3d 168, 171-172 (Ala. 2012) (applying the principals of a cause of action for wrongful foreclosure and affirming summary judgment in favor of mortgagee as to Jackson's negligent and wanton foreclosure claims)).

default had occurred. (Doc. 1-3, p. 32-33)  There is no dispute of fact that the foreclosure sale did not occur.  On this basis, defendants argue that the power of sale under the mortgage was not used and Webb's claim of wrongful foreclosure fails as a matter of law. Webb argues that at the time the demand was made and the foreclosure was noticed, the mortgage was not in default and Ocwen had not been assigned the mortgage. Therefore, the initiation of the foreclosure was wrongful without regard to whether the sale did not occur.

Under Alabama law, a claim for wrongful foreclosure arises "whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180, 182 (Ala.1992). The bankruptcy court for the Northern District of Alabama, explaining that it "did not find what it was looking for" as to the elements of a wrongful foreclosure action, considered Alabama case law and delineated the following elements as guidelines for consideration:  Whether "(1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or(4) the mortgagee had an ill motive."*In re Sharpe*, 391 B.R. 117, 152-153 (Bankr.N.D.Ala.2008).  The court further explained that "[u]nder Alabama law, if an action by a mortgagee was *for the purpose of securing the debt owed by the mortgagor*, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *Id*. at 153.  Thus, a foreclosure may be wrongful where there is an improper motive or "evidence that there was no debt to secure" such as evidence that a mortgage had been paid before the foreclosure. *Phifer v. Bank of America*, 2012 WL 1571300, *4 (slip copy) (M.D. Ala. May 4, 2012) (denying summary

judgment as to wrongful foreclosure claim on basis there was "no evidence that there was a mortgage debt" at the time of the second foreclosure).

In this action, there is no dispute of fact that Webb's mortgage debt was still outstanding at the time she received the notice of foreclosure and at the time the foreclosure notices were published. However, since no foreclosure sale occurred, defendants did not use the power of sale and Webb cannot meet this threshold requirement. Therefore, summary judgment is GRANTED in favor of defendants as to this claim. *See Forester v. Bank of America, N.A.*, 2012 WL 3206471, *3-4 (S.D. Ala. Aug. 7, 2012) (distinguishing *Sturdivant v. BAC Home Loan Servicing, LP*, - - - So. 3d - - -, 2011 WL 6275697 (Ala. Civ. App. 2011) on basis that a foreclosure sale had been held and finding that Alabama law clearly states that '[a] mortgagor has a wrongful foreclosure action whenever a mortgagee uses the *power of sale* given under a mortgage for a purpose other than to secure the debt owed by the mortgagor'" and distinguishing *Matthews v. Alaska Seaboard Partners Ltd.*, 2006 WL 2686932 (S.D.Ala. Sept. 19, 2006) on basis that the court denied summary judgment as to Matthew's wrongful foreclosure claim, "but only because [the court] first found a genuine issue of material fact about whether the subject loan had been fully satisfied before the alleged foreclosure.") (italics in original).

B.  <u>Negligence and wantonness</u>

Webb raises two specific claims against both Ocwen and Freddie Mac: Negligent and wanton servicing of her mortgage (Doc. 1-3, Amended Complaint, ¶43 "Defendants have been negligent in servicing of Plaintiff's mortgage"; ¶46 "Defendants have been wanton in servicing of Plaintiff's mortgage"); and negligent and wanton "attempts to foreclose" on her property. (Doc. 1-3, ¶ 44, 47)  The latter is addressed in the section addressing Webb's claim for wrongful foreclosures. As to each, Webb claims compensatory damages including economic loss (loss of

sales commission), mental anguish and emotional distress.

    1. Defendant Freddie Mac

Freddie Mac was the owner of the mortgage and note executed by Webb. As such, Webb has alleged a claim for breach of the mortgage agreement against Freddie Mac, in addition to the tort claims of negligent and wanton servicing of the mortgage. Freddie Mac's duty to service the mortgage properly, *i.e*, duty to collect and properly credit Webb's payments to her account and duty not to impose charges in violation of the mortgage agreement, arose from the mortgage and note. In that regard, "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung v. Mortgage Electronic Registration Systems, Inc.,* 2012 WL 1642209, *7 (N.D.Ala.2012) (citation and internal quotations omitted); *see also Barber v. Bus. Prods. Ctr., Inc.,* 677 So.2d 223, 228 (Ala.1996), *overruled on other grounds by White Sands Grp., LLC v. PRS II, LLC,* 32 So.3d 5 (Ala.2009) ("a mere failure to perform a contractual obligation is not a tort"). Therefore, because Alabama does not recognize a tort cause of action for breach of a contractual duty, summary judgment is GRANTED in favor of Freddie Mac as to Webb's claims for negligent and wanton servicing of the mortgage.

    2. Defendant Ocwen

        a. Negligent servicing of Webb's mortgage

Webb alleges that defendants' negligence has caused mental anguish, emotional distress and economic loss. However, she concedes that she has no physical injury and did not experience an immediate risk of physical injury because of Ocwen's conduct such that it could be liable for the tort of negligence. *See Brown v. First Federal Bank*, 95 So. 3d 803, 818 (Ala. Civ. App. 2012) ("Damages for mental anguish are not recoverable for negligence except where the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an

immediate risk of physical injury by that conduct.") As to her claim for economic loss, Webb argues that she has "other actual damages, including loss of income". (Doc. 30, p. 25) In the damages section of her brief, Webb states that she was paid a salary plus 5% commission on products sold. (*Id*., p. 9) She states that she was "forced" to take leave and "took off numerous days to meet with attorneys prior to the foreclosure" and "lost commission for that time off." (*Id*., p. 9)

However, under Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic, *i.e.*, lost commissions. *See Forester v. Bank of America, N.A.*, 2012 WL 3206471, *5 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care. Pure economic loss—which is what [Forester] claims—does not suffice.") (citing *Blake v. Bank of America, N.A.*, 2012 WL 607976 (M.D. Ala. Feb. 27, 2012) and *McClung v. Mortgage Electronic Registration Systems, Inc.,* 2012 WL 1642209 at *8 (N.D.Ala.2012)).

Because Webb has failed to make a sufficient showing on the damages element of her claim of negligent servicing of her mortgage, summary judgment is **GRANTED** in favor of Ocwen. *See Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (The elements of a negligence claim brought under Alabama law are "a duty, a breach of that duty, causation, and damage.")

   b. <u>Wanton servicing of Webb's mortgage</u>

Defendants argue that Alabama law does not recognize a tort claim for wanton servicing of a mortgage where the obligation at issue – to properly service the mortgage – is contractual and arises from the mortgage and note. Thus, they assert that Webb's claim based upon Ocwen's alleged wanton conduct fails. Defendants are correct. As previously discussed, no such claim

exists in Alabama.  Accordingly, the defendants' motion for summary judgment as to Webb's claim for wanton servicing of the mortgage is **GRANTED**.  *Blake v. Bank of America*, N.A., 845 F Supp. 2d 1206 (M.D. Ala. Feb. 27, 2012); *Jackson v. Countrywide Home Loans, Inc.* 2012 WL 777180, *7 (M.D. Ala. Mar. 7, 2012); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, *5 (N.D. Ala. May 07, 2012); *In re Small*, 2012 WL 213286 (Bankr. S.D. Ala. June 12, 2012); *Fassina v. CitiMortgage, Inc.,* 2012 WL 2577608, *6 (N.D. Ala. Jul 2, 2012); *Forester v. Bank of America*, N.A., 2012 WL 3206471, *4-5 (S.D. Ala. Aug. 7, 2012).

  C. <u>Defamation</u>

  Webb claims that defendants published false and defamatory statements when they published the foreclosure notices. (Doc. 1-3, p. 35-36)  However, Webb concedes that summary judgment should be granted as to her defamation claim. (Doc. 1-3, p. 35; Doc. 30 p. 23, n. 3) Accordingly, summary judgment is **GRANTED** in favor of Ocwen and Freddie Mac as to her claim of defamation.

  D. <u>Breach of mortgage agreement</u>

  Webb claims that Ocwen and Freddie Mac's "acts and omissions" in managing her account and conducting the foreclosure sale constitute a breach of the mortgage agreement.  She claims compensatory damages including for mental anguish and emotional distress. (Doc. 1-3, p. 34-35)  To the extent that Webb's claims are based on defendants' conduct related to the foreclosure of her mortgage, defendants did not breach the mortgage agreement in connection with the institution of foreclosure because the foreclosure sale did not occur. *Forester v. Bank of America, N.A.*, 2012 WL 3206471, *5 (S.D. Ala. Aug. 7, 2012) (citing In re Small, 2012 WL 213286 (Bankr. S.D. Ala. June 12, 2012)).

1. <u>Defendant Ocwen</u>

Defendants first argue that Webb did not have a contract with Ocwen because it was not a party to the mortgage agreement and therefore, Ocwen is entitled to summary judgment. Webb argues that because Ocwen acted as the lender and also failed to disclose that it was Freddie Mac's agent, Ocwen is liable for breach of the mortgage. As to the specifics of the breach of contract, Webb argues that the condominium owner's property insurance rider to the mortgage was breached because of the wrongful imposition of the property insurance charge. Webb also argues that the mortgage was breached because of failure to credit her monthly payments made to the prior servicer, rejection of her payments in March 2010, the failure to provide an accurate cure amount, and instituting foreclosure.

The elements of a breach of contract claim under Alabama law are (1) "the existence of a valid contract binding the parties in the action, (2) the plaintiff's own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Poole v. Prince,* 61 So.3d 258, 274 (Ala.2010) (internal quotations omitted). Therefore, Webb must first establish the existence of a valid contract with Ocwen. The parties do not dispute the absence of a contract between Webb and Ocwen. Webb relies upon a theory of agency under Alabama law based in part on Ocwen's alleged failure to disclose to Webb that it was acting as Freddie Mac's agent by servicing the mortgage. However, the Alabama cases cited by Webb involve the circumstance where the agent entered into a contract on behalf of an undisclosed principal. Under that theory, Ocwen could be liable only if it had entered into the mortgage on behalf of Freddie Mac. That did not occur. Webb also argues that Ocwen stepped into Freddie Mac's position upon assignment of the mortgage. However, Webb's mortgage was assigned to Ocwen on June 29, 2010, after the conduct creating the alleged breach had occurred. Therefore, summary judgment

is **GRANTED** in favor of Ocwen as to Webb's claim for breach of the mortgage agreement.

2. Defendant Freddie Mac

Defendants do not dispute the existence of a mortgage agreement between Webb and Freddie Mac but argue that her breach of contract claim should be dismissed because she cannot show actual damages. Webb appears to concede that she lost only her 5% commission on the sale of goods and services for the days that she met with her attorneys. (*See supra* at p. 8)  Thus, her actual economic damages are limited to the 5% commission she may have earned had she been at work.

However, there is a genuine dispute of material fact as to how many days Webb took off work and whether she can claim lost commissions. Webb states that she took "numerous" days off to meet with her attorneys.  (Doc. 30, p. 9)  Defendants argue that she "requested one or two days leave to address the issue, primarily to meet with her lawyers." (Doc. 24, p. 18)  Defendants also argue that because Webb's employer required her to take vacation leave, "the evidence is that [Webb] could not have earned additional commissions by forfeiting vacation days used to meet with her attorneys." (*Id*.)  However, Webb's supervisors did not testify that taking vacation was mandatory.  Instead, their testimony indicates that taking vacation leave was encouraged because if the employees do not take vacation days, they lose their vacation and there is no compensation for electing not to take vacation, i.e., no increase in salary. (Doc. 25-7, Blount deposition at 38-39; Doc. 25-8, Cooch deposition at p. 23-24, 30).  Thus, Webb could have worked instead of taking vacation and possibly earned the 5% commission of sales and services.

Defendants also argue that Webb cannot recover mental anguish damages on a breach of contract claim under Alabama law because Alabama courts have limited such damages to circumstances where the contractual duty is coupled with matters of mental concern, solicitude

or the feelings of the party to whom the duty is owed, such that a breach will necessarily or reasonably result in mental anguish. Defendants argue that these cases generally involve the habitability of one's home.  Defendants also argue that their conduct was not egregious, that the foreclosure never occurred, and Webb remains in her home.

Webb argues that Alabama law provides for mental anguish damages because the breach of contract concerns her home.  Webb cites to *First Commercial Bank v. Spivey*, 694 So. 2d 1316, 1320 (Ala. 1997) in support.  In *Spivey*, the Alabama Supreme Court upheld an award of compensatory damages based largely on the evidence of mental and emotional distress arising from defendant's fraudulent conduct that resulted in foreclosure.  Also, in *Union Security Life Insurance Company v. Crocker*, 709 So. 2d 1118 (Ala. 1997) (on remand after *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1196)), the Alabama Supreme Court allowed mental distress damages arising from a threatened foreclosure.  Crocker's husband was sold a credit life insurance policy in connection with a loan consolidation at First Alabama Bank.  Mr. Crocker died from heart disease and Mrs. Crocker filed a claim with Union Security. Her claim was denied on basis of his history of heart disease, a fact known to the First Alabama employee who completed the application.  The Court explained that "without her husband's income, and without the benefits of the coverage for which she had paid premiums, Mrs. Crocker was unable to pay off the balance on her First Alabama loan." *Id*. at 1120.  Foreclosure was set for "five days before the first Christmas that Mrs. Crocker would spend as a widow" and "halted only after [she] obtained legal counsel." *Id*.  Mrs. Crocker was awarded damages for mental and emotion distress on her fraud action against Union Security and First Alabama. Thus, at least in the context of fraud, Alabama recognizes damages for mental and emotional distress where the foreclosure sale was only threatened.

In *Cooley v. Gulf Bank, Inc.*, 773 So. 2d 1039 (Ala. Civ. App. 1999), the Cooleys brought a breach of contract claim against Gulf Bank in regard to a construction loan for the construction of their residence. Citing *Sexton v. St. Clair Federal Savings Bank*, 653 So. 2d 959, 961 (Ala. 1995), for the premise that there is "an exception based on a 'contractual duty' that is 'coupled with matters of mental concern or solicitude' . . . involving contracts relating to a plaintiff's current residence", the appellate court explained that "because the jury found in favor of the Cooley's on their breach-of-contract claim, the jury should have been allowed to consider an exception to the rule relating to damages for mental suffering or anguish." *Id*. at 1044.

More recently, in *In re Sharpe*, 425 B.R. 620 (Bankr. N.D. Ala. 2010) (adversary proceeding), the bankruptcy court analyzed Alabama's prohibition against awarding mental anguish damages for breach of contract and the sole exception thereto. In *Sharpe*, the bankruptcy court found that the mortgagee breached the terms of the mortgage agreement by failing to give proper notice of the foreclosure and acceleration of the debt of the debtor's lake house. The bankruptcy court also found that even if the house had been their principal residence, debtors had not satisfied their "burden of proving that they were entitled to compensatory damages for mental anguish" because "defendant's breach *was not* egregious" since the "foreclosure occurred because the plaintiffs did not pay their mortgage." *Id*. at 648 (italics in original)

In *Sharpe*, the bankruptcy court set out three elements "essential to the right to recover mental-anguish damages for the breach of a home-construction contract" – "(1) that the breach be egregious, *i.e.*, that it result in severe construction defects; (2) that those defects render the home virtually uninhabitable; and (3) that the breach necessarily or reasonably result in mental anguish or suffering." *Id*. at 647-648. These elements appear adaptable to the facts before the

17

Court. Although Webb's foreclosure did not occur, there exists a genuine issue of material fact as to whether Freddie Mac's conduct is egregious such that Webb may be entitled to mental anguish damages. Specifically, defendants argue that all payments have been properly credited and that Webb is in arrears as to the monthly payments for April 2009 and July 2009 as well as the additional amount due because property insurance was purchased by TBW and later by Ocwen. Webb argues that she paid all of her monthly mortgage payments and provided TBW and Ocwen with a Certificate of Insurance showing that the condominium association had purchased property insurance. Webb also presents evidence that she tried to rectify these disputes, twice obtained counsel, and stopped the foreclosure only after filing a lawsuit. If defendants' conduct was as Webb argues, then a reasonable fact-finder could determine the conduct to be egregious such that mental anguish damages may be available to Webb.

As previously stated, the parties have focused on the damages aspect of Webb's claim for breach of contract. Because there is a genuine dispute of material fact as to Webb's actual damages, *i.e.*, how many days she took off work and whether she lost sales commissions, and a genuine dispute of material fact as to whether defendants' conduct was so egregious as to allow damages for mental anguish, summary judgment is **DENIED** as to Freddie Mac as to Webb's claim for breach of the mortgage agreement.

   E.  Injunctive relief

Webb seeks injunctive relief to enjoin defendants from instituting further foreclosure proceedings and from foreclosing on her property. (Doc. 1-3, p. 31-32) Ocwen argues that Webb's request for injunctive relief is moot because she has no valid basis to contest a foreclosure that never occurred and is now stayed indefinitely. Ocwen also argues that any request to enjoin a future foreclosure sale is not ripe for decision. Webb seeks a permanent

injunction because of Ocwen's allegedly wrongful contention that she is in breach of the mortgage. She argues that Ocwen's voluntary suspension moots her request only where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."(Doc. 30, p. 21)

Ocwen continues to assert that Webb is in default of her mortgage, *i.e*, the allegedly wrongful contention. Thus, no subsequent events have occurred. Until the factual issue of default is resolved, Webb's request for injunctive relief is not moot. Accordingly, Webb's request for injunctive relief is carried to trial.

VI.  Conclusion

For the reasons set forth herein, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

DONE and ORDERED this the 26th day of November, 2012.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE